**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF TENNESSEE**
**AT CHATTANOOGA**

| | | |
|---|---|---|
| HAMILTON COUNTY EMERGENCY | ) | |
| COMMUNICATIONS DISTRICT, | ) | |
| | ) | |
| *Plaintiff*, | ) | Case No. 1:11-cv-330 |
| | ) | |
| vs. | ) | |
| | ) | JURY DEMAND |
| BELLSOUTH TELECOMMUNICATIONS, | ) | |
| LLC d/b/a AT&T TENNESSEE, | ) | |
| | ) | |
| *Defendant*. | ) | |

## FIRST AMENDED COMPLAINT

Pursuant to Fed. R. Civ. P. 15(a)(1)(B), Plaintiff Hamilton County Emergency Communications District (the "District") submits this First Amended Complaint for declaratory, injunctive, and monetary relief, and for its causes of action against Defendant BellSouth Telecommunications, LLC d/b/a AT&T Tennessee ("Defendant"), the District states to the Court as follows:

## SUMMARY OF FIRST AMENDED COMPLAINT

1.    Pursuant to state law, the District provides critical, lifesaving emergency 911 services to the citizens of Hamilton County and to others who visit and travel through our community.  These services are an essential and indispensible component of the public safety and emergency preparedness system of Hamilton County and the towns and cities located within the County.  The District's 911 services have permitted emergency response personnel to be promptly directed to the scenes of emergencies, dangers, and disasters, thereby saving countless lives and providing incalculable benefits to the citizens of this County.

2.     The District's 911 services are principally funded by emergency telephone service charges ("911 Charges") collected from users by suppliers of telephone services.  Defendant is the largest telephone services supplier in Hamilton County.  Along with other telephone service suppliers, Defendant has the statutory responsibility to bill, collect, report, and remit to the District 911 Charges on each telephone line that may be used as a pathway to the District's emergency call center.

3.     Tennessee law provides that the 911 Charges "shall have uniform application and shall be imposed throughout the entire district to the greatest extent possible in conformity with the availability of such service within the district."  Tenn. Code Ann. § 7-86-108.

4.     Even though Defendant's charges to the District for telephone services to the District's operation centers constitute the largest expense of the District other than personnel costs, Defendant has intentionally failed to fulfill its obligation to bill, collect, report, and remit to the District 911 Charges necessary to finance the District's operational and capital needs.  Rather, in order to obtain competitive advantage, Defendant has refused to bill, collect or remit the full emergency service charges upon which the District relies.  In so doing, Defendant has purposefully deprived the District of the revenue it needs to provide its critical, lifesaving 911 emergency services within Hamilton County.

5.     This case is brought by the District under the Tennessee False Claims Act, Tenn. Code Ann. § 4-18-101, *et seq.* ("False Claims Act"), and other law to compel Defendant to fulfill its obligations as required by law, to collect from Defendant unpaid amounts and to recover from Defendant penalties, costs, and expenses provided by law.

6.     As more specifically described below, Defendant has (i) failed and refused to bill, collect, truthfully report, and remit 911 Charges on voice lines supplied by multiplex circuits; (ii)

failed and refused to bill, collect, truthfully report, and remit 911 Charges on business voice lines supplied by single line circuits; (iii) failed and refused to bill, collect, truthfully report, and remit 911 Charges on residential voice lines supplied by single line circuits; (iv) promised to under-collect 911 Charges in order to gain an unlawful and unfair competitive advantage; and (v) failed and refused to bill, collect, truthfully report, and remit 911 Charges on voice lines in excess of one hundred (100) lines although the lines in excess of one hundred (100) provided pathways to the District's 911 services from multiple locations.

## PARTIES, JURISDICTION, AND VENUE

7.      The District is a municipal corporation located in Chattanooga, Tennessee with a business address of 3404 Amnicola Highway, Chattanooga, Tennessee 37406.  As approved by the voters of Hamilton County in 1984, the District was organized and operates pursuant to the Emergency Communications District Law, Tenn. Code Ann. § 7-86-101, *et seq*. (the "ECD Law"), which assigns to the District the responsibility for providing critical, lifesaving emergency 911 telephone services within Hamilton County.

8.      Defendant Bellsouth Telecommunications, LLC d/b/a AT&T Tennessee is a Georgia limited liability company with a principal business address at 675 W. Peachtree St., NW, Suite 4500, Atlanta, Georgia 30375.  It can be served through its registered agent CT Corporation System, 800 S. Gay St., Suite 2021, Knoxville, Tennessee 37929.  At all times relevant to this suit, Defendant has supplied residential and business telephone lines within Hamilton County.

9.      Complete diversity of citizenship exists between the District and Defendant.

10.     The amount in controversy in this action exceeds $75,000.00, exclusive of interest and costs.

11.     Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1332.

12.     This Court has jurisdiction over the parties to this cause.

13.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391.

## FACTUAL BACKGROUND

14.     To enhance public safety, policy makers across the nation embraced in the late 1960s the concept of a single, easy to remember, emergency calling code.  The system developed in the last 40 years has been remarkably successful and has saved many lives.  Due to the success of the system, citizens consider that access to 911 is a critical public telephone service that must be ubiquitous and reliable.

### A.  GENERAL BACKGROUND OF EMERGENCY COMMUNICATIONS DISTRICT LAW IN TENNESSEE AND CREATION OF EMERGENCY COMMUNICATIONS DISTRICTS

15.     In 1984, the State of Tennessee enacted the ECD Law to formally establish 911 as the primary emergency services telephone number in the state.  Tenn. Code Ann. § 7-86-101, *et seq*.  To implement 911 services, the ECD Law permitted the legislative body of any city or county to create an emergency communications district ("ECD") within its boundaries following approval by a majority of qualified voters in the proposed district area.  Tenn. Code Ann. § 7-86-104.  The District was organized pursuant to this authority in 1984, following approval by the citizens of Hamilton County in an election held in November, 1984.

16.     In 1998, the Tennessee General Assembly amended the ECD Law to require provision of "Enhanced" 911 service.  In its most basic form, this enhanced service automatically

sends the caller's location and phone number to the District, so that its 911 personnel can more efficiently dispatch emergency service personnel. In the course of passing legislation that provided for the Enhanced 911 service and addressed the financing of emergency 911 services, the Tennessee General Assembly found and declared, among other things, that "the continued viability of the lifesaving 911 emergency communications service is of the highest priority for the health and safety of the citizens of Tennessee." *See* 1998 Tenn. Pub. Acts, ch. 1108, § 2 (codified as Tenn. Code Ann. § 7-86-102(b)(1)).

17. The ECD Law authorizes the boards of directors of ECDs to levy an emergency telephone service charge to be used "to fund the 911 emergency telephone service." Tenn. Code Ann. § 7-86-108. Telephone "service suppliers" such as Defendant are required to bill and collect the 911 Charges from all "service users"— any person, corporation or entity that is provided 911 service—and to report and pay 911 Charges at least every two (2) months to the ECD serving the areas from which the 911 Charges were collected. ECDs may unilaterally set the 911 Charges on each pathway capable of connecting to the 911 Service Center up to a maximum of $.65 per residential line and $2.00 per business line. If necessary to meet budgetary demands, ECDs may also seek approval for 911 Charges of up to $1.50 for residential lines and $3.00 for business lines by applying to the Tennessee Emergency Communications Board. Telephone service suppliers are authorized to retain up to three percent (3%) of the 911 Charges collected from service users as an administrative fee. The ECD Law provides that 911 Charges may not be imposed upon more than one hundred (100) business lines per user per location.

18. Prior to March 2005, the monthly 911 Charge levied by the District was $.65 for residential lines and $2.00 per business line. In March, 2005, the District obtained approval from

the Tennessee Emergency Communications Board to increase the monthly 911 Charge to $1.50 for residential lines and $3.00 for business lines.

19.    The District is governed by an unpaid board that includes the chief law enforcement officers of Chattanooga and Hamilton County, emergency service officials, other law enforcement and governmental officials, and private citizens.  Under the direction of this board, the District has created and operates extensive facilities staffed by trained personnel 24 hours a day, seven days a week, who receive emergency 911 telephone calls and transmit emergency information to police, fire, ambulance, and other emergency service providers ("District's 911 Center").

20.    The ECD Law mandates that the 911 Charges shall be billed, collected, and remitted by telephone service suppliers for each line capable of transmitting a voice call to a 911 emergency communications district.  Tenn. Code Ann. §§ 7-86-103, 7-86-108(d), and 7-86-110.

## B. DEFENDANT'S DUTIES AS A SERVICE PROVIDER IN HAMILTON COUNTY

21.    Defendant is, and has at all relevant times been, a telephone service supplier providing residential and business lines in the District's service area of Hamilton County, Tennessee.  Defendant is the largest of more than fifty (50) telephone service suppliers operating in Hamilton County.

22.    Defendant is and has been required under the ECD Law to bill, collect, report, and remit to the District 911 Charges for each residential and business voice pathway that Defendant supplies to a service user in Hamilton County and that is capable of reaching the District's 911 Center.

23. More specifically, the ECD Law provides that "[t]he board of directors [of the ECD] shall pass a resolution specifying the date on which the 911 service is to begin and the date on which the service supplier *will* begin to bill service users for such service." Tenn. Code Ann. § 7-86-108(d)(1) (emphasis added). In accordance with this statutory provision, at its December 13, 1984 regular meeting, the District directed that Defendant, then doing business as South Central Bell, "should begin collection of the service charge at the rate of 3% as soon as possible." Defendant began billing the 911 Charge to service users on or about February 8, 1985.

24. Defendant announced to the District that its practice was to bill, collect, and remit to the District 911 Charges for all lines for which it charged telephone service tariffs. Further, Defendant reported that it was paying the District 911 Charges "based on an assumption of 100% payment of telephone billing" without deduction for any amounts not collected by Defendant.

25. Defendant never subsequently informed the District of any change in its practice of billing, collecting, and remitting 911 Charges on all lines for which it charged telephone service tariffs. To the contrary, Defendant continued to represent throughout the relevant period that it was remitting 911 Charges to the District based upon all "lines billed" to service users for telephone services.

26. At all times relevant to this case, and at least since January 1, 2001, Defendant, or persons or entities acting directly on its behalf, has presented to the District each month a report that purported to accurately report the number of residential and business lines capable of providing a pathway to the District's 911 services that Defendant supplied to service users in Hamilton County during the previous month (the "Monthly Reports").

27.     Under the ECD Law, Defendant owed a specific, legal obligation to transmit 911 Charges to the District for all lines supplied by Defendant that supplied pathways capable of reaching the District's 911 Center at the time that that it submitted to the District the Monthly Reports that contained the false records and statements.

28.     Similarly, Tenn. Code Ann. § 7-86-110(d) requires Defendant to annually provide to the District's board of directors a certified accounting of 911 Charges (the "Annual Reports"). At all times relevant to this case, and at least since January 1, 2001, Defendant, or persons or entities acting directly on its behalf, has submitted to the District's board of directors each year Annual Reports.

29.     The Annual Reports that Defendant submitted to the District purported to accurately report the number of residential and business lines capable of providing a pathway to the District's 911 services that Defendant supplied to service users in Hamilton County during the annual period covered by each Annual Report.

30.     In addition to its obligations to remit 911 Charges to the District, Defendant is also statutorily entitled to collect certain fees from the District for services that Defendant provides to the District.  For example, in order to provide Enhanced 911 service as mandated by the ECD Law, it is necessary for the District to utilize caller identification technologies and services that identify, retrieve, and transmit information regarding the caller's location and phone number from a centralized database to the District's 911 Call Center (these technologies are collectively referred to as "Caller ID Database Services").  Defendant charges the District for connecting to the District's 911 Center all lines that Defendant and other service suppliers supply in Hamilton County and for Caller ID Database Services to the District for those lines. Defendant charges the District monthly fees for connecting these lines to the District's 911

Center and for providing Caller ID Database Services for these lines, pursuant to Defendant's General Subscriber Services Tariff for "A13. Miscellaneous Service Arrangements" (the "Tariff").

31.     The District is required by Tenn. Code Ann. § 7-86-111 to pay Defendant's charges for connecting lines to the 911 Center and for Caller ID Database Services.  According to the Tariff,  Defendant imposes a specified monthly charge per 1,000 lines that it connects to the District's 911 Center and for which it provides Caller ID Database Services.

## C. Defendant's Actions as a Service Supplier in Hamilton County

32.     For every month since the District commenced providing 911 services, Defendant has charged the District a fee for connecting to the District's 911 Center lines that Defendant supplies in Hamilton County and for providing Caller ID Database Services for those lines.  As one example of these charges in practice, during the billing period ending December 22, 2010, Defendant billed the District for connecting to the District's 911 Center and providing Caller ID Database Services for 90,000 lines that Defendant supplied in Hamilton County.  The District paid Defendant the charges for Defendant's services, as required by the ECD Law.

33.     However, since a time presently unknown, Defendant has billed the District for connecting to the District's 911 Center and providing Caller ID Database Services a number of lines supplied by Defendant in Hamilton County far in excess of the number of lines for which Defendant reported and remitted 911 Charges to the District.  For example, although Defendant billed, and the District paid, for connecting to the District's 911 Center and providing Caller ID Database Services for 90,000 lines that Defendant supplied in Hamilton County in December, 2010, Defendant falsely reported in its monthly report to the District for December, 2010 that it

only supplied 64,636 lines. In that month alone, Defendant submitted to the District a false monthly report to conceal, avoid, or decrease its obligation to pay or transmit 911 Charges on some 25,000 telephone lines supplied by Defendant.

34. By charging the District for far more lines than it was remitting 911 Charges to the District, Defendant sought to maximize money that it received from the District, while simultaneously seeking to minimize, conceal, avoid, and decrease Defendant's obligation to pay or transmit money to the District. As set forth below, the District has identified at least five unlawful practices by Defendant that have each have given rise to false reports by Defendant. The District does not yet know the full extent of the methods used by Defendant to deprive the District of 911 Charges, and the District reserves the right to further amend this First Amended Complaint following discovery of additional unlawful practices as they come to light.

### 1. DEFENDANT'S PURPOSEFUL UNDER-BILLING, UNDER-COLLECTING, AND UNDER-PAYMENT OF 911 CHARGES FOR BUSINESS LINES PROVIDED BY MULTIPLEX CIRCUITS

35. At a point in time currently unknown to the District, Defendant began offering to its business telephone subscribers multiplex telephone services capable of transmitting multiple voice or data lines over independent channels on a single multiplexed circuit. These multiplex services are typically T-1 lines that provide 24 channels. When implemented under the Primary Rate Interface ("PRI"), 23 of the 24 channels of a multiplexed circuit are configured as voice lines, and the remaining channel carries control and signaling information. Each of the voice lines is assigned a unique ten-digit telephone number and can be used to access 911 emergency services.

36. At all relevant times, the ECD Law required Defendant to bill, collect, report, and remit to the District the 911 Charges levied by the District for each voice line supplied through a

multiplexed circuit.  Instead, Defendant intentionally billed, collected, reported, and remitted the 911 Charges on only a small fraction of the voice lines supplied through each multiplexed circuit.  Defendant has admitted this conduct in filings with this Court.

37.     Defendant knew that the ECD Law required Defendant to bill, collect, and remit the 911 Charges levied by the District for each voice line providing a pathway to the District's 911 services through a multiplexed circuit.

38.     Since at least January 1, 2001, Defendant has presented to the District a Monthly Report that purported to accurately report the number of residential and business lines capable of providing a pathway to the District's 911 services that Defendant supplied to service users in Hamilton County during the previous month.

39.     However, Defendant knowingly submitted Monthly Reports that contained false records and statements of the number of voice lines that Defendant supplied to residential and business customers, including the number of voice lines supplied to business customers through multiplexed circuits.

40.     Defendant owed a specific, legal obligation to pay or transmit 911 Charges to the District at the time that that it submitted to the District the Monthly Reports that contained the false records and statements.

41.     The false records and statements contained in the Monthly Reports had the effect of concealing, avoiding, or decreasing an existing legal obligation by Defendant to pay or transmit monies in the form of applicable 911 Charges to the District.  Defendant submitted the false records and statements contained in the Monthly Reports for the purpose of concealing, avoiding, or decreasing its existing legal obligation to pay or transmit all applicable 911 Charges to the District.

42. The Monthly Reports were transmitted to the District in Hamilton County, Tennessee by mail or by wire.

43. Prior to the filing of this action, Defendant did not inform the District that Defendant was not billing, collecting, reporting, and remitting 911 Charges on all voice lines that it supplied to business customers through multiplexed circuits.

44. In addition, since at least January 1, 2001, Defendant has submitted to the District's board of directors Annual Reports. The Annual Reports that Defendant submitted to the District purported to accurately report the number of business lines capable of providing a pathway to the District's 911 services that Defendant supplied to service users in Hamilton County during the annual period covered by each Annual Report.

45. However, Defendant knowingly submitted Annual Reports that contained false records and statements of the number of voice lines that Defendant supplied to business customers, including the number of voice lines supplied to business customers through multiplexed circuits. The false records and statements contained in the Annual Reports had the effect of concealing, avoiding, or decreasing an existing legal obligation by Defendant to pay or transmit monies in the form of applicable 911 Charges to the District. Defendant submitted the false records and statements contained in the Annual Reports for the purpose of concealing, avoiding, or decreasing its existing legal obligation to pay or transmit all applicable 911 Charges to the District.

46. The Annual Reports were transmitted to the District in Hamilton County, Tennessee by mail or by wire.

47. At all relevant times, the Monthly Reports and Annual Reports that Defendant presented to the District did not state that Defendant was not billing, collecting, reporting, and

remitting 911 Charges on all voice lines that it was providing to business customers through multiplexed circuits.

48. Except for billing information provided to service users, information regarding the number of voice lines that Defendant supplied to business customers through multiplexed circuits at all relevant times to this First Amended Complaint was solely and exclusively within the control and possession of Defendant. The District does not have access to billing information provided to service users by Defendant.

49. Defendant's practices of intentionally billing, collecting, reporting, and remitting on fewer voice pathways than those that can reach the District's 911 Center are violations of the ECD Law and have resulted in false reports being made to the District.

### 2. DEFENDANT'S PURPOSEFUL UNDER-BILLING, UNDER-COLLECTING, AND UNDER-PAYMENT OF 911 CHARGES FOR SINGLE-CIRCUIT BUSINESS LINES

50. At all relevant times, the ECD Law required Defendant to bill, collect, report, and remit to the District the 911 Charges levied by the District upon each voice line supplied to a service user. In spite of this requirement, Defendant has failed and refused to bill, collect, report, and remit to the District 911 Charges for a currently unknown number of single circuit business lines supplied to service users in Hamilton County.

51. Defendant knew that the ECD Law required Defendant to bill, collect, report, and remit the 911 Charges at the rate levied by the District for each business voice line supplied to a user, including each single circuit business line. Nevertheless, Defendant knowingly and wrongfully failed and refused to bill, collect, truthfully report, and remit to the District the 911 Charges for each single circuit business line that it supplied.

52.     As an example of this wrongdoing, Defendant submitted to the government of Hamilton County, Tennessee a bill dated November 16, 2010, for billing number 423-M37-1965 in which it billed the County for nearly sixty (60) telephone lines provided to the County at multiple locations.  In knowing violation of the ECD Law and in derogation of duties owed to the District, Defendant did not include in its bill, nor did it collect and remit to the District, any 911 Charges for the telephone lines covered by the November 16, 2010 bill.  Defendant knowingly submitted a false Monthly Report to the District in December, 2010 and subsequently filed a false Annual Report that concealed, avoided, and decreased Defendant's obligation to pay or transmit 911 Charges to the District for the telephone lines covered by the November 16, 2010 bill.

53.     As a further example of this wrongdoing, Defendant submitted to the government of Hamilton County, Tennessee a bill dated August 16, 2011, for billing number 423-M37-1965 in which it billed the County for nearly sixty (60) telephone lines provided to the County at multiple locations.  Defendant only billed 911 Charges in the amount of $66.00, the 911 Charges that would be due on twenty-two (22) lines.  In knowing violation of the ECD Law and in derogation of duties owed to the District, Defendant did not include in its bill, nor did it collect and remit to the District, 911 Charges for the majority of the telephone lines covered by the August 16, 2011 bill.  Defendant knowingly submitted a false Monthly Report to the District in September, 2011 that concealed, avoided, and decreased Defendant's obligation to pay or transmit 911 Charges to the District for all of the telephone lines covered by the August 16, 2011 bill.

54.     Defendant knowingly submitted Monthly Reports and Annual Reports that contained false records and statements of single circuit business lines as to which Defendant failed and refused to bill, collect, and remit 911 Charges.

55.     Defendant owed a specific, legal obligation to transmit 911 Charges to the District at the time that that it submitted to the District the Monthly Reports that contained the false records and statements.

56.     The false records and statements contained in the Monthly Reports had the effect of concealing, avoiding, or decreasing an existing legal obligation by Defendant to pay or transmit monies in the form of applicable 911 Charges to the District.  In fact, Defendant submitted the false records and statements contained in the Monthly Reports for the purpose of concealing, avoiding, or decreasing its existing legal obligation to pay or transmit all applicable 911 Charges to the District.

57.     The Monthly Reports and Annual Reports were transmitted to the District in Hamilton County, Tennessee by mail or by wire.

58.     Prior to the filing of this action, Defendant did not inform the District that Defendant was not billing, collecting, reporting, and remitting 911 Charges on all single circuit business lines that it supplied to service users in Hamilton County.

59.     At all relevant times, the Monthly Reports and Annual Reports that Defendant presented to the District did not state that Defendant was not billing, collecting, reporting, and remitting 911 Charges on all single circuit business lines that it supplied to service users in Hamilton County.

60.     Except for billing information provided to service users, information regarding the number of single circuit business lines that Defendant supplied to service users in Hamilton

County at all relevant times to this First Amended Complaint was solely and exclusively within the control and possession of Defendant. The District does not have access to billing information provided to service users by Defendant.

61.    Defendant's practices of failing and refusing to bill, collect, report, and remit to the District 911 Charges for a currently unknown number of single circuit business lines supplied to service users in Hamilton County are violations of the ECD Law and have resulted in false reports being made to the District.

### 3.    DEFENDANT'S PURPOSEFUL UNDER-BILLING, UNDER-COLLECTING, AND UNDER-PAYMENT OF 911 CHARGES FOR RESIDENTIAL LINES

62.    At all relevant times, the ECD Law required Defendant to bill, collect, report, and remit to the District the 911 Charges levied by the District upon each voice line supplied to a service user. In spite of this requirement, Defendant has failed and refused to bill, collect, report, and remit to the District 911 Charges for a currently unknown number of residential lines that it supplied to service users in Hamilton County.

63.    Defendant knew that the ECD Law required Defendant to bill, collect, report, and remit the 911 Charges at the rate levied by the District for each residential voice line that it supplied. Nevertheless, Defendant knowingly and wrongfully failed and refused to bill, collect, truthfully report, and remit to the District the 911 Charges for each residential line that it supplied.

64.    Defendant knowingly submitted Monthly Reports and Annual Reports that contained false records and statements of residential lines as to which Defendant failed and refused to bill, collect, and remit 911 Charges.

65.     Defendant owed a specific, legal obligation to transmit 911 Charges to the District at the time that that it submitted to the District the Monthly Reports that contained the false records and statements.

66.     The false records and statements contained in the Monthly Reports had the effect of concealing, avoiding, or decreasing an existing legal obligation by Defendant to pay or transmit monies in the form of applicable 911 Charges to the District.  In fact, Defendant submitted the false records and statements contained in the Monthly Reports for the purpose of concealing, avoiding, or decreasing its existing legal obligation to pay or transmit all applicable 911 Charges to the District.

67.     The Monthly Reports and Annual Reports were transmitted to the District in Hamilton County, Tennessee by mail or by wire.

68.     Prior to the filing of this action, Defendant did not inform or otherwise notify the District that Defendant was not billing, collecting, reporting, and remitting 911 Charges on all residential lines that it supplied in Hamilton County.

69.     At all relevant times, the Monthly Reports and Annual Reports that Defendant presented to the District did not state that Defendant was not billing, collecting, reporting, and remitting 911 Charges on all residential lines that it supplied in Hamilton County.

70.     Except for billing information provided to purchasers of residential lines, information regarding the number of residential lines that Defendant supplied in Hamilton County at all relevant times to this First Amended Complaint was solely and exclusively within the control and possession of Defendant. The District does not have access to billing information provided to service users by Defendant.

71.     Defendant's practices of failing and refusing to bill, collect, report, and remit to the District 911 Charges for a currently unknown number of single circuit residential lines supplied in Hamilton County are violations of the ECD Law and have resulted in false reports being made to the District.

### 4. DEFENDANT'S BARGAINING AWAY OF 911 SERVICE CHARGES OWED TO THE DISTRICT TO SEEK AN UNLAWFUL COMPETITIVE ADVANTAGE

72.     Defendant has deliberately failed and refused to bill, collect, report, and remit to the District 911 Charges as required by the ECD Law in order to gain an unfair and unlawful competitive advantage over other telecommunications suppliers. For example, on March 1, 2011, Defendant submitted a proposal to Hamilton County for Centrex and flat rate business lines in response to Hamilton County's Request for Proposal #111-01 (the "Proposal"). In its Proposal, Defendant stated that it would not bill and collect the 911 Charges at the $3.00 rate per month per line currently levied by the District and required by law, but would instead bill and collect only $2.00 per month per line. Defendant also promised to discount its normal rates by $6.27 per line per month. By promising to under-bill and under-collect the 911 Charges by $1.00 per line per month, Defendant underbid the next lowest proposal by $0.69 per line per month and was awarded most of the lines under the requirement as low bidder. By stating that it would under-bill and under-collect the 911 Charges by $1.00 per month, Defendant achieved its $0.69 per line per month price advantage without having to further increase its discount, unlawfully increasing its profits at the expense of revenue to support the critical emergency services provided by the District.

73. Defendant knowingly submitted Monthly Reports and Annual Reports to the District that contained false records and statements of 911 Charges that Defendant under-billed and under-collected in order to gain an unlawful competitive advantage.

74. Defendant owed a specific, legal obligation to transmit 911 Charges to the District at the time that that it submitted to the District the Monthly Reports that contained the false records and statements.

75. The false records and statements contained in the Monthly Reports had the effect of concealing, avoiding, or decreasing an existing legal obligation by Defendant to pay or transmit monies in the form of applicable 911 Charges to the District. In fact, Defendant submitted the false records and statements contained in the Monthly Reports for the purpose of concealing, avoiding, or decreasing its existing legal obligation to pay or transmit all applicable 911 Charges to the District.

76. The Monthly Reports and Annual Reports were transmitted to the District in Hamilton County, Tennessee by mail or by wire.

77. Defendant's practices of intentionally under-billing and under-collecting on pathways capable of reaching the District's 911 Center in order to gain an unlawful competitive are violations of the ECD Law and have resulted in false reports being made to the District.

### 5. DEFENDANT'S PURPOSEFUL MISAPPLICATION OF STATUTORY EXEMPTION REGARDING LINES AT SINGLE LOCATIONS

78. At all relevant times, the ECD Law required Defendant to bill, collect, and remit the 911 Charges levied by the District upon each voice line supplied to a service user up to one hundred (100) lines provided to the user at a single location. In spite of this requirement, Defendant has failed and refused to bill, collect, and remit 911 Charges where more than one

hundred (100) lines were supplied to a user even though the users' lines provided pathways to the District's 911 services from multiple locations.

79.     Defendant knew that the ECD Law required Defendant to bill, collect, and remit the 911 Charges levied by the District for each voice line supplied to a user where one hundred (100) or fewer lines were supplied at a single location.

80.     As an example of this wrongdoing, Defendant submitted to the government of Hamilton County, Tennessee a bill for the period ending August 17, 2011, for billing number 423-209-6020 in which it billed the County for telephone lines providing more than five hundred (500) voice channels capable of reaching the District's 911 Center from County facilities at more than a dozen locations.  In knowing violation of the ECD Law and in derogation of duties owed to the District, Defendant included in its bill and collected 911 Charges for only one hundred (100) telephone lines covered by the August 17, 2011 bill.  Defendant knowingly submitted a false Monthly Report to the District in September, 2011 that concealed, avoided, and decreased Defendant's obligation to pay or transmit 911 Charges to the District for the telephone lines covered by the August 17, 2011 bill.

81.     Defendant knowingly submitted Monthly Reports and Annual Reports that contained false records and statements excluding voice lines in excess of one hundred (100) lines when the lines in excess of one hundred (100) provided pathways to the District's 911 services from multiple locations.

82.     Defendant owed a specific, legal obligation to transmit 911 Charges to the District at the time that that it submitted to the District the Monthly Reports that contained the false records and statements.

83.     The false records and statements contained in the Monthly Reports had the effect of concealing, avoiding, or decreasing an existing legal obligation by Defendant to pay or transmit monies in the form of applicable 911 Charges to the District.  In fact, Defendant submitted the false records and statements contained in the Monthly Reports for the purpose of concealing, avoiding, or decreasing its existing legal obligation to pay or transmit all applicable 911 Charges to the District.

84.     The Monthly Reports and Annual Reports were transmitted to the District in Hamilton County, Tennessee by mail or by wire.

85.     Defendant's practices of failing and refusing to bill, collect, report, and remit to the District 911 Charges where more than one hundred (100) lines were supplied to a user, even though the users' lines provided pathways to the District's 911 services from multiple locations, are violations of the ECD Law and have resulted in false reports being made to the District.

### D.  THE DISTRICT'S ATTEMPTS TO IDENTIFY 911 CHARGE INFORMATION IN THE SOLE POSSESSION OF DEFENDANT

86.     Because counsel for the District suspected that Defendant had violated the Tennessee False Claims Act, he was required by the False Claims Act to investigate whether violations had occurred.  Tenn. Code Ann. § 4-18-104(b).

87.     On September 29, 2011, pursuant to the requirements of the False Claims Act, counsel for the District sent Defendant a letter requesting Defendant to produce information and documents in its possession regarding the number of voice lines that Defendant has supplied to business customers through multiplexed circuits since January 1, 2001 and the amount of 911 Charges that Defendant assessed and remitted on such lines.

88.     As of the date of the filing of this First Amended Complaint, Defendant has continued to fail and refuse to provide any of the information and documents requested in the District's September 29, 2011 letter.

## COUNT I:
## VIOLATION OF THE TENNESSEE FALSE CLAIMS ACT

89.     The District hereby incorporates the allegations set forth in all previous paragraphs of this First Amended Complaint.

90.     Defendant is a Person under the False Claims Act, Tenn. Code Ann. § 4-18-101, *et seq.*

91.     The District is a Political Subdivision under the False Claims Act.

92.     The undersigned General Counsel of the District, Michael J. Mahn, is the District's Prosecuting Authority under the False Claims Act.

93.     The ECD Law imposes upon Defendant a duty to bill, collect, report, and remit to the District the 911 Charges upon each voice line or pathway capable of reaching the District's 911 Center supplied by Defendant to service users in Hamilton County, up to 100 lines per user per location.  Tenn. Code Ann. §§ 7-86-108 and -110.

94.     As a result of Defendant's violations of the ECD Law as set forth herein, the Monthly Reports and Annual Reports contained a false record or statement of each voice line or pathway that Defendant omitted from those reports.

95.     Defendant owed a specific, legal obligation to transmit 911 Charges to the District at the time that it submitted the Monthly Reports containing a false record or statement of each voice line or pathway that Defendant omitted from those reports.  This obligation was not a potential or contingent obligation, but was an actual and present obligation to transmit money to

the District based upon the number of voice lines or pathways capable of reaching the District's 911 Center that Defendant supplied to service users in Hamilton County.

96.    Defendant knowingly made, used, or caused to be made the false records or statements contained in the Monthly Reports and the Annual Reports to conceal, avoid, or decrease Defendant's obligation to pay or transmit 911 Charges on residential and business voice lines or pathways capable of reaching the District's 911 Center that Defendant supplied to service users in Hamilton County.

97.    As a result of Defendant's violations of the ECD Law as set forth herein, Defendant submitted false Monthly Reports and Annual Reports in which it knowingly understated tens of thousands of voice lines or pathways each month for which Defendant was required to bill, collect, and remit 911 Charges.  Because of Defendant's deception, the District lacks information sufficient to identify the total number of false records or statements contained in the Monthly Reports and Annual Reports, as the information necessary to make this determination is in Defendant's sole control.  However, the District asserts that such false records or statements are contained in each Monthly Report and each Annual Report provided by Defendant from January 1, 2001 forward.

98.    For these reasons, the District prays that the Court find Defendant's conduct to be in violation of the False Claims Act and:

(a)    award the District compensatory and treble damages in an amount to be determined by the jury, plus pre-judgment interest and the costs of this action, including attorney fees;

(b)    award the District civil penalties of $10,000.00 for each false record or statement; and

(c)      provide such other and further relief to which the District may be entitled.

## COUNT II:
## RECOVERY FOR VIOLATIONS OF
## THE EMERGENCY COMMUNICATIONS DISTRICT LAW

99.     The District hereby incorporates the allegations set forth in all previous paragraphs of this First Amended Complaint.

100.    The ECD Law imposes upon Defendant a duty to bill, collect, report, and remit to the District the 911 Charges upon each voice line or pathway capable of reaching the District's 911 Center that Defendant supplied to service users in Hamilton County, up to 100 lines per user per location. Tenn. Code Ann. §§ 7-86-108 and -110.

101.    The District was an intended beneficiary within the protection of the ECD Law. The 911 Charges that the ECD Law required Defendant to bill, collect, report, and remit to the District provided the principal source of funding for the District's provision of 911 services.

102.    In violation of the ECD Law and in breach of its duty, Defendant did not bill, collect, report, and remit to the District all 911 Charges upon each voice line or pathway capable of reaching the District's 911 Center that Defendant supplied to service users in Hamilton County, up to 100 lines per user per location.

103.    The District has a right of action under the ECD Law to recover from Defendant all 911 Charges that Defendant was required to bill, collect, report, and remit to the District. The Legislature intended for the District to have this right of action.

104.    The existence of a right of action under the ECD Law is consistent with the ECD Law's underlying purpose of providing a means for delivery of 911 services to the public. If the ECD Law cannot be enforced by emergency communications districts, such as the District,

against service suppliers, such as Defendant, who purposefully or negligently fail to fulfill their obligations under the ECD Law, no means would exist to ensure the funding of 911 services as intended by the Legislature.

105.    Defendant's violation of the ECD Law proximately caused the District to suffer significant injury, including the loss of significant operational funds to which it was and is entitled.

106.    For these reasons, the District prays that the Court enter judgment in the District's favor, and award compensatory damages, punitive damages, costs, and any other relief to which the District may be entitled.

## COUNT III:
## BREACH OF FIDUCIARY DUTY

107.    The District hereby incorporates the allegations set forth in all previous paragraphs of this First Amended Complaint.

108.    During all relevant times, Defendant was under a fiduciary duty to bill, collect, report, and remit to the District the 911 Charges upon each voice line or pathway capable of reaching the District's 911 Center supplied by Defendant to service users in Hamilton County, up to 100 lines per user per location.  *See generally*, Tenn. Code Ann. § 7-86-101, *et seq*. Defendant was further obligated by its fiduciary duty to remit to the District those 911 Charges, less an administrative fee.  *Id*.  These fiduciary duties were imposed upon Defendant by the ECD Law and common law and derive from the special and confidential relationship between the District and Defendant.

109.     The fiduciary relationship between the parties gave rise to a duty of care on the part of Defendant to the District whereby Defendant would act with utmost good faith, loyalty, and honesty toward the District.

110.     The ECD Law sets out a system to fund 911 emergency services that requires emergency communications districts, such as the District, to rely upon telecommunications suppliers, such as Defendant, to act in good faith and with honesty in billing, collecting, and remitting to the districts the appropriate 911 Charges.

111.     The District has had to rely on Defendant to act in good faith and with honesty because the District is not aware of the actual number of business or residential voice lines or pathways capable of reaching the District's 911 Center supplied by Defendant to service users in Hamilton County or of the actual amount of 911 Charges the District should receive.  Defendant has sole and exclusive control of that information.

112.     As the sole party possessing the information needed to determine the correct amount of 911 Charges that should have been paid or transmitted to the District, Defendant was in a dominant position in its relationship with the District.  As Defendant determined the amount of 911 Charges received by the District, and as those 911 Charges made were the principal source of the District's operating and capital funds, Defendant effectively exercised control over the District.

113.     In relying on Defendant to perform its statutory obligations, the District trusted Defendant would act with utmost good faith, loyalty, and honesty toward the District.

114.     Defendant knowingly breached its fiduciary duties to the District and the standard of care by:

(a) concealing from the District the actual number of voice lines or pathways capable of reaching the District's 911 Center supplied by Defendant to service users in Hamilton County, up to 100 lines per user per location.;

(b) concealing from the District the correct amount of 911 Charges owed to the District;

(c) failing to bill, collect, and remit to the District the full amount of 911 Charges owed to the District; and

(d) misleading the District concerning the actual amount of 911 Charges owed to the District.

115. Defendant's breach of its fiduciary duties and the standard of care injured the District, proximately causing the District to lose significant amounts of revenue needed to fund the District's essential emergency services.

116. For these reasons, the District prays that the Court enter judgment in its favor and award it compensatory and punitive damages in amounts to be determined by the jury, including amounts due in arrearage, plus interest and costs.

## COUNT IV:
## FRAUDULENT MISREPRESENTATION

117. The District hereby incorporates the allegations set forth in all previous paragraphs of this First Amended Complaint.

118. The ECD Law imposes upon Defendant a duty to bill, collect, report, and remit to the District the 911 Charges upon each voice line or pathway capable of reaching the District's 911 Center supplied by Defendant to service users in Hamilton County, up to 100 lines per user per location. Tenn. Code Ann. §§ 7-86-108 and -110.

119.    Defendant submitted to the District Monthly Reports and Annual Reports that purported to accurately identify, during the time period of the reports, the number of business and residential voice lines or pathways capable of reaching the District's 911 Center that were supplied by Defendant to service users in Hamilton County.

120.    Defendant's statements to the District in its Monthly Reports and Annual Reports purported to express existing or past facts as to the actual number of voice lines or pathways capable of reaching the District's 911 Center supplied by Defendant to service users in Hamilton County, and, correspondingly, the actual amount of 911 Charges to be billed, collected, and remitted to the District under the ECD Law.

121.    Defendant's statements to the District in its Monthly Reports and Annual Reports were false at that time of their making, as Defendant omitted a significant number of voice lines or pathways capable of providing a pathway to the District's 911 Center and under-reported the amount of 911 Charges owed to the District under the ECD Law.

122.    As the purpose of the statements in the Monthly Reports and Annual Reports was to communicate the basis for the emergency service charge payment due to the District, Defendant's statements regarding the number of lines it supplied and the amount of 911 Charges owed to the District misrepresented material facts.

123.    Defendant knew its representations in its Monthly Reports and Annual Reports regarding the number of business and residential voice pathways capable of reaching the District's 911 Center and corresponding amount of 911 Charges owed to the District were false, because it knew it supplied more voice lines capable of providing a pathway to the District's 911 services than it represented in the statements.    Alternatively, Defendant's misrepresentations

were made recklessly, as Defendant was capable of determining the correct number of such lines and was statutorily compelled to do so.

124.    The District, having no knowledge that Defendant's representations identified above were not truthful, reasonably relied upon the misrepresentations and suffered damages as a proximate result, including loss of operating and capital funds to which it was statutorily entitled.

125.    For these reasons, the District prays that the Court enter judgment in its favor awarding compensatory and punitive damages in amounts to be determined by the jury, plus costs, interests, and any other relief to which the District may be entitled.

## COUNT V:
## FRAUDULENT CONCEALMENT

126.    The District hereby incorporates the allegations set forth in all previous paragraphs of this First Amended Complaint.

127.    Defendant owed a duty to the District under the ECD Law and common law to truthfully and accurately identify in its Monthly Reports and Annual Reports the number of voice lines or pathways capable of reaching the District's 911 Center that were supplied by Defendant to service users in Hamilton County, up to 100 lines per user per location.

128.    Defendant submitted to the District Monthly Reports and Annual Reports that purported to accurately identify, during the time period of the reports, the number of voice lines or pathways capable of reaching the District's 911 Center that were supplied by Defendant to service users in Hamilton County, up to 100 lines per user per location.

129.    Defendant's statements to the District in its Monthly Reports and Annual Reports purported to express existing or past facts as to the actual number of voice line or pathway capable of reaching the District's 911 Center supplied by Defendant to service users in Hamilton

County, up to 100 lines per user per location, and, correspondingly, the actual amount of 911 Charges to be remitted to the District under the ECD Law.

130.     Defendant's statements to the District in its Monthly Reports and Annual Reports were false at that time of their making, as Defendant concealed the number of voice lines or pathways capable of reaching the District's 911 Center that were supplied by  Defendant to service users in Hamilton County, up to 100 lines per user per location, and thereby under-reported the amount of 911 Charges owed to the District under the ECD Law.

131.     Defendant owed a duty to the District under the ECD Law and common law to inform the District that its statements in the Monthly Reports and Annual Reports did not truthfully or accurately identify the number of voice lines or pathways capable of reaching the District's 911 Center that were supplied by Defendant to service users in Hamilton County, up to 100 lines per user per location.

132.     As the purpose of the statements in the Monthly Reports and Annual Reports was to communicate the basis for the emergency service charge payment to the District, Defendant's Monthly Reports and Annual Reports concealed material facts which Defendant had a duty to disclose.

133.     Defendant intended to conceal that the actual number of business and residential voice pathways capable of reaching the District's 911 Center and amount of 911 Charges to which the District was entitled, as is evidenced, among other things, by its knowledge that it supplied more voice lines or pathways capable of reaching the District's 911 Center, than were reported in Defendant's Monthly Reports and Annual Reports.  Alternatively, Defendant recklessly failed to disclose this information, as it was capable of determining the correct number of such lines and was statutorily compelled to do so.

134. The District, having no knowledge that Defendant's concealment of this information, reasonably relied upon the misrepresentations and suffered damages as a proximate result, including loss of operating and capital funds to which it was statutorily entitled.

135. For these reasons, the District prays that the Court enter judgment in its favor awarding compensatory and punitive damages in amounts to be determined by the jury, plus costs, interests, and any other relief to which the District may be entitled.

## COUNT VI:
## NEGLIGENT MISREPRESENTATION

136. The District hereby incorporates the allegations set forth in all previous paragraphs of this First Amended Complaint.

137. In its Monthly Reports and Annual Reports, Defendant supplied false information to the District purporting to identify, during the time period of the reports, the number of voice lines or pathways capable of reaching the District's 911 Center that were supplied by Defendant to service users in Hamilton County, up to 100 lines per user per location.

138. The information provided by Defendant misrepresented and concealed the actual number of business and residential the number of voice lines or pathways capable of reaching the District's 911 Center that were supplied by Defendant to service users in Hamilton County, up to 100 lines per user per location, and consequently, the amount of 911 Charges due to the District under the ECD Law. Specifically, Defendant's statements were false in that they omitted a significant number of the number of voice lines or pathways capable of reaching the District's 911 Center that were supplied by Defendant to service users in Hamilton County, up to 100 lines per user per location, and thus, under-reported the amount of 911 Charges to which the District was entitled under the ECD Law.

139.    Despite its ability to do so, Defendant did not exercise reasonable care in communicating this false information or in making a determination as to whether the information it was communicating to the District was truthful or accurate.  Defendant failed to communicate to the District that Defendant's reports did not truthfully or accurately identify the number of business and residential the number of voice lines or pathways capable of reaching the District's 911 Center that were supplied by Defendant to service users in Hamilton County, up to 100 lines per user per location.

140.    It was foreseeable to Defendant that the District would rely on the false information that Defendant supplied to the District in its Monthly Reports and Annual Reports, as Defendant had exclusive access to its customer records.

141.    The District, having no knowledge that Defendant's representations identified above were untruthful, reasonably relied upon the misrepresentations and suffered damages as a proximate result, including loss of operating and capital funds to which it was statutorily entitled.

142.    For these reasons, the District prays that the Court enter judgment in its favor awarding compensatory damages in an amount to be determined by the jury, plus costs, interests, and any other relief to which Plaintiff may be entitled.

## COUNT VII:
### NEGLIGENCE AND NEGLIGENCE *PER SE*

143.    The District hereby incorporates the allegations set forth in all previous paragraphs of this First Amended Complaint.

144.    Defendant was under statutory and common law duties to submit to the District payment of the proper amount of 911 Charges.  The ECD Law imposed upon Defendant a statutory duty to bill, collect, report, and remit to the District 911 Charges for all voice lines or

pathways capable of reaching the District's 911 Center that were supplied by Defendant to service users in Hamilton County, up to 100 lines per user per location. Tenn. Code Ann. § 7-86-101, *et seq*. Defendant was also under a statutory and common law duty to bill, collect, report, and remit to the District the 911 Charges in good faith and in accordance with the standards applicable to reasonable service suppliers.

145. Defendant breached these duties by failing to exercise reasonable care to determine that it was properly billing and collecting for all voice lines or pathways capable of reaching the District's 911 Center that were supplied by Defendant to service users in Hamilton County, up to 100 lines per user per location. Defendant also breached these duties by failing to use reasonable care to ensure that the amounts remitted to the District were the full and appropriate amounts for all voice lines or pathways capable of reaching the District's 911 Center that were supplied by Defendant to service users in Hamilton County, up to 100 lines per user per location.

146. The Defendant's breaches of its duties to exercise reasonable care in the billing, collecting, and remitting of 911 Charges actually and proximately caused injury to the District, including loss of operating and capital funds to which the District was statutorily entitled.

147. Defendant's breach of the statutory duty imposed by the ECD Law also constitutes negligence *per se*. The ECD Law imposed a duty on Defendant to bill, collect, report, and remit to the District 911 Charges on all voice lines or pathways capable of reaching the District's 911 Center that were supplied by Defendant to service users in Hamilton County, up to 100 lines per user per location. Tenn. Code Ann. § 7-86-101, *et seq*.

148. The District was within the class of persons the ECD Law was designed to protect as it was an intended recipient of the 911 Charges and relied on payment of those charges to fund its essential, legislatively-authorized operations.

149. The District's injuries, including its failure to receive the funds to which it is entitled under the ECD Law, are the precise injuries the ECD Law was designed to prevent, and these injuries hinder and impair the District's ability to provide 911 services in furtherance of the ECD Law's stated purposes.

150. Defendant's breaches of its statutory and common-law duties proximately caused injury to the District, including loss of operating and capital funds to which the District was statutorily entitled.

151. For these reasons, the District prays that the Court enter judgment in its favor awarding compensatory damages in an amount to be determined by the jury, plus costs and interest.

## COUNT VIII: REQUEST FOR DECLARATORY JUDGMENT

152. The District incorporates the allegations set forth in all previous paragraphs of this First Amended Complaint.

153. An actual, present, and justiciable controversy has arisen and now exists between the District and Defendant concerning Defendant's legal obligations under the ECD Law to bill, collect, and remit to the District payment of emergency 911 Charges based on the number of voice lines or pathways capable of connecting to the District's 911 Center, including voice lines or pathways supplied by multiplex circuits, single business and residential circuits; Defendant's application of statutory limits on the application of 911 Charges to more than one hundred (100)

lines per user per location; and Defendant's conduct in discounting 911 Charges to its subscribers to seek competitive advantage or for other reasons.

154. The District contends, and Defendant disputes, that the ECD Law has at all relevant times imposed upon Defendant the obligation to bill, collect and remit payment to the District of 911 Charges for all voice lines or pathways capable of reaching the District's 911 Center that were supplied by Defendant to service users in Hamilton County, up to 100 lines per user per location, as set forth herein.

155. A judicial declaration regarding these issues is necessary and appropriate so that the District may ascertain and effectively enforce its rights to receive full and complete payment of 911 Charges as authorized by the ECD Law.

156. For these reasons, the District prays that the Court issue a declaratory judgment expressly holding that the ECD Law at all relevant times has imposed upon Defendant the obligation to bill, collect, report, and remit to the District 911 Charges for all voice lines or pathways capable of reaching the District's 911 Center that were supplied by Defendant to service users in Hamilton County, up to 100 lines per user per location and that Defendant may to forego collection of 911 Charges or reduce 911 Charges to gain competitive advantage or otherwise.

## COUNT IX:  REQUEST FOR PERMANENT INJUNCTION

157. The District hereby incorporates the allegations set forth in all previous paragraphs of this First Amended Complaint.

158. Defendant is obligated by the ECD Law and other applicable law to submit to the District reports truthfully and complete records or statements of all voice lines or pathways

capable of reaching the District's 911 Center that were supplied by Defendant to service users in Hamilton County, up to 100 lines per user per location, and to remit to the District for all such voice lines or pathways the full and appropriate amount of the 911 Charges levied by the District

159.    Defendant's failure to meet its statutory obligations have and will continue to irreparably harm the District, because the District relies upon the 911 Charges to provide funding for its vital operations.

160.    Defendant's failure to meet its statutory obligations have threatened, and will continue to   threaten, the public, because, as the Tennessee General Assembly found and declared, "the continued viability of the lifesaving 911 emergency communications service is of the highest priority for the health and safety of the citizens of Tennessee."

161.    The District does not have any other adequate legal remedy, as future enforcement of its rights under the ECD Law would likely require the District to file and litigate multiple actions.

162.    A permanent injunction, an equitable remedy, is warranted considering the balance of hardships between the parties.   Defendant would suffer absolutely no legally cognizable harm from being required to meet its statutory obligations.   Conversely, the District and the public would be manifestly and actually harmed by Defendant's failure to fulfill its statutory obligations.

163.    The public interest would be served by the issuance of a permanent injunction.

164.    For these reasons, the District prays that the Court permanently enjoin Defendant from failing to bill, collect, truthfully report, and remit to the District 911 Charges for all voice lines or pathways capable of reaching the District's 911 Center that are supplied by Defendant to service users in Hamilton County, up to 100 lines per user per location.

165.     This is the District's first application for extraordinary relief.

**WHEREFORE**, premises considered, the Hamilton County Emergency Communications District respectfully requests that the Court grant the following relief:

1.     That proper process issue and be served upon Defendant requiring it to appear and answer this First Amended Complaint in the manner and within the time permitted by law;

2.     That judgment enter against Defendant and in favor of the District in the amount to be determined at trial, together with treble damages, punitive damages, and all pre- and post-judgment interest accruing under applicable law;

3.     That this Court assess against Defendant a civil penalty of $10,000 for each false record or statement submitted to the District;

4.     That this Court enter a declaration that the Emergency Communications District Law imposes, and at all relevant times has imposed, upon Defendant the obligation to bill, collect, report, and remit to the District 911 Charges for all voice lines or pathways capable of reaching the District's 911 Center that were supplied by Defendant to service users in Hamilton County, up to 100 lines per user per location;

5.     That this Court permanently enjoin Defendant from failing to fully and truthfully bill, collect, report, and remit to the District 911 Charges for each voice line or pathway capable of reaching the District's 911 Center that was supplied by Defendant to service users in Hamilton County, up to 100 lines per user per location;

6.     That the District be awarded its costs of this action, including its reasonable attorneys' fees;

7.     That a jury be empanelled to try all issues so triable by a jury; and

8.     That the Court award the District such other general and special relief to which it may be entitled, as the Court deems appropriate, and as justice and equity may require.

Respectfully submitted,

By:  s/Michael J. Mahn
         Michael J. Mahn, BPR No. 001200
711 Signal Mountain Road, PMB 316
Chattanooga, Tennessee 37405
Phone: 423.280.3005
Facsimile: 423.370.1332

*General Counsel for the Hamilton County Emergency Communications District*

~and~

By:  s/Frederick L. Hitchcock
         Frederick L. Hitchcock, BPR No. 005960
         Tom Greenholtz, BPR No. 020105
         Yousef A. Hamadeh, BPR No. 25425
Chambliss, Bahner & Stophel, P.C.
1000 Tallan Building
Two Union Square
Chattanooga, Tennessee 37402
Telephone: (423) 757-0222
Facsimile: (423) 508-1222
rhitchcock@cbslawfirm.com
tgreenholtz@cbslawfirm.com

*Special Counsel for the Hamilton County Emergency Communications District*

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on this 1st day of January, 2012, a copy of the foregoing pleading was filed electronically.  Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt.  All other parties will be served by regular U.S. mail.  Parties may access the filing through the Court's electronic filing system.

**CHAMBLISS, BAHNER & STOPHEL, P.C.**

By:  <u>s/Frederick L. Hitchcock</u>