| | |
|---|---|
| HAMILTON COUNTY EMERGENCY COMMUNICATIONS DISTRICT, ET AL.,<br><br>    *Plaintiffs*,<br><br>vs.<br><br>BELLSOUTH TELECOMMUNICATIONS, LLC,<br><br>    *Defendant*. | CASE NOS. 1:11-cv-330;<br>1:12-cv-003; 1:12-cv-056;<br>1:12-cv-131; 1:12-cv-138;<br>1:12-cv-139; 1:12-cv-149;<br>1:12-cv-166; 1:12-cv-176;<br>1:12-cv-186<br><br>JURY DEMAND |

**DISTRICTS' REPLY TO RESPONSE OF BELLSOUTH REGARDING DISTRICTS' RULE 56(c)(2) OBJECTIONS**

Plaintiff Hamilton County Emergency Communication District, on its own behalf and on behalf of the Plaintiffs in the related cases (the "Districts"), submits the following Reply to BellSouth's Response to the Districts' Objections pursuant to Fed. R. Civ. P. 56(c)(2). For the reasons set forth in the Districts' Objections[1] and in this Reply, the Court should grant the relief sought by the Districts and should not consider the admitted hearsay contained in paragraphs 5-10 of Ms. Gustafson's declaration or the testimony and arguments of BellSouth that are subject to judicial estoppel.

**I. JUDICIAL ESTOPPEL PRECLUDES BELLSOUTH TESTIMONY AND ARGUMENT THAT CONTRADICTS PRIOR SWORN TESTIMONY OF BELLSOUTH.**

Bellsouth is incorrect in its argument that the doctrine of judicial estoppel is a narrow one, confined to a single formulation. To the contrary, as the Supreme Court explained in *New Hampshire v. Maine*, 532 U.S. 742 (2001), that "'[t]he circumstances under which judicial

---

[1] Court File Nos. 279 (Districts' Rule 56(c)(2) Objs., Hearsay); 280 (Districts' Rule 56(c)(2) Objs., Judicial Estoppel).

estoppel may appropriately be invoked are probably not reducible to any general formulation of principle . . . ."[2]

Although the form of judicial estoppel applied by the Supreme Court in *New Hampshire, supra,* did not involve estoppel by oath, the Court made clear that the judicial estoppel that it applied was not the only form of the "equitable doctrine":

> In enumerating these factors, we do not establish inflexible prerequisites or an exhaustive formula for determining the applicability of judicial estoppel. Additional considerations may inform the doctrine's application in specific factual contexts. In this case, we simply observe that the factors above firmly tip the balance of equities in favor of barring New Hampshire's present complaint.[3]

The opinion of Judge Neese in *Holt v. Southern Ry. Co.*,[4] applied a form of equitable estoppel, "which upholds the sanctity of an oath and precludes a party who has made a sworn statement, even in another litigation, from repudiating the same when he thinks it is to his advantage to do so. It might well be termed 'estoppel by oath.'"[5] *Holt*, *supra*, is instructive and is directly on point.

Judge Neese concluded that in a diversity action state law provided the rule of decision on the issue of judicial estoppel. BellSouth has pointed to more recent Sixth Circuit authority that holds that federal courts should not automatically apply state law as the rule of decision in cases involving judicial estoppel, because "[j]udicial estoppel is a rule designed to protect the integrity of judicial institutions . . . and federal courts must be free to develop principles that most adequately serve their institutional interests."[6] Development of the judicial estoppel principles that will best serve the institutional interests of federal courts permit consideration of both federal and state precedent. "In determining the content of federal common law, a court is

---

[2] *New Hampshire v. Maine*, 532 U.S. 742 at 750.
[3] *Id.*
[4] 51 F.R.D. 296, 299 (E.D. Tenn. 1969).
[5] *Id.* at 298-99 (citations omitted) (emphasis supplied).
[6] *Edwards v. Aetna Life Ins. Co.*, 690 F.2d 595, 598 n.4 (6th Cir. 1982).

free to choose any rule it deems appropriate, and it may look for guidance to other federal contexts, to what it perceives to be first principles, to considerations of equity and convenience, or to the law of the forum state."[7] In a diversity action, it is appropriate that strong consideration be given to the law of the forum state, particularly where, as in Tennessee, the principle of estoppel by oath has been fully developed by the state's highest court.[8]

BellSouth asserts that *New Hampshire*, *supra*, permits the application of judicial estoppel only where the party offering the inconsistent sworn testimony prevailed on a position supported by the previous testimony. This position ignores the clear instruction of the Supreme Court that it was not establishing "inflexible prerequisites or an exhaustive formula for determining the applicability of judicial estoppel."[9]

BellSouth's position is also not supported by Sixth Circuit law. In his dissent in the case of *Reynolds v. Commissioner of Internal Revenue*,[10] Judge Kennedy recognized that "[t]wo theories underlie the doctrine of judicial estoppel. One is the sanctity of oath, clearly not at issue here. The other is the successfully asserted or 'prior success' rule, and is applicable only where an earlier court accepted a party's contrary position."[11] "Prior success" is not a factor in the form of judicial estoppel based upon the sanctity of the oath.

That *New Hampshire, supra*, does not require "prior success" in a case of judicial estoppel based upon the sanctity of the oath was affirmed by the Eleventh Circuit Court of Appeals in *Burnes v. Pemco Aeroplex, Inc.*,[12] in which the court considered the application of judicial estoppel based upon the sanctity of the oath. The court stated that, in the Eleventh

---

[7] *See* Wright, Miller & Cooper, 19 *Fed. Prac. & Proc. Juris.* § 4514 at n. 19.

[8] *Id.* at n. 22 ("Thus, often there is a 'federal rule' in the sense that there is federal competence, but the federal rule is that the law of the forum state should be applied."). Tennessee's law regarding estoppel by oath is set forth in the recent case of *Cracker Barrel Old Country Store, Inc. v. Epperson*, 284 S.W.3d 303, 314-15 (Tenn. 2009).

[9] *New Hampshire,* 532 U.S. at 750.

[10] 861 F.2d 469 (6th Cir. 1988).

[11] *Id.* at 475.

[12] 291 F.3d 1282 (11th Cir. 2002).

Circuit, two factors were considered in evaluating the application of this form of estoppel: "'First, it must be shown that the allegedly inconsistent positions were made under oath in a prior proceeding. Second, such inconsistencies must be shown to have been calculated to make a mockery of the judicial system.'"[13] Notably, these factors do not include any requirement that the prior, inconsistent position had to be adopted by a tribunal. Noting the Supreme Court's explanation that the doctrine was not "reducible to any general formulation of principle,"[14] the Court found that the two factors, which did not include any requirement of "prior success" were consistent with the Supreme Court's instructions in *New Hampshire*, *supra*.[15] Indeed, the Court "recognize[d] that these two enumerated factors are not inflexible or exhaustive; rather, courts must always give due consideration to all of the circumstances of a particular case when considering the applicability of this doctrine."[16]

As Judge Neese found in *Holt v. Southern Ry. Co.*, *supra,* judicial estoppel based upon the sanctity of the oath – estoppel by oath – should preclude BellSouth's efforts to contradict its previous, sworn testimony. BellSouth simply asserts in a footnote that *Holt* is distinguishable. It is not.

## II. BELLSOUTH TESTIMONY AND ARGUMENTS DIRECTLY CONTRADICT BELLSOUTH'S PRIOR SWORN TESTIMONY.

### A. Paragraph 5 of the Kelley Declaration Contradicts BellSouth's Prior Sworn Testimony.

By their objection, the Districts seek to preclude from consideration Paragraph 5 of the declaration of Jimmy Kelley in which he asserted "[i]n late 2010, BellSouth discovered that zero-rated USOCs in Tennessee inadvertently were not being billed 911 Surcharges."[17] The

---

[13] *Id.* at 1285.

[14] *New Hampshire v. Maine*, 532 U.S. at 750-51.

[15] *Burnes, supra*, 291 F.3d at 1285-86.

[16] *Id.* at 1286.

[17] Court File No. 265 (Kelley Decl.).

Districts noted that BellSouth offered a declaration of Mr. Jimmy Kelley that asserted that BellSouth did not discover that it was not billing zero-rated USOCs until late 2010, directly contradicting BellSouth's testimony offered through Mr. Kelley as its Rule 30(b)(6) representative.

**BellSouth's Response does not provide any basis for denial of the Districts' Objections:** First, although Mr. Kelley asserted in his declaration that "*BellSouth discovered*" that zero-rated USOCs were not being billed 911 Charges, BellSouth asserts in its Response that Mr. Kelley's declaration only addresses his personal knowledge: "Plaintiffs challenge Paragraph 5 of Jimmy Kelley's declaration, in which he states *he became aware* of the zero-rated USOC issue 'in late 2010'. . ."[18] It was improper for BellSouth to offer Mr. Kelley's inconsistent declaration about BellSouth's knowledge; it is even more so for BellSouth to misstate the content of Mr. Kelley's declaration in an attempt to avoid the Districts' Objections.

Second, BellSouth admits that the Districts are correct that Paragraph 5 of the Kelley declaration *does* contradict Mr. Kelley's Rule 30(b)(6) testimony in which he stated that he knew by at least early 2010 that BellSouth was not billing 911 Charges on lines with zero-rated USOCs. However, BellSouth does not address Mr. Kelley's testimony on behalf of BellSouth that, apart from the March 2010 email, which showed that BellSouth was not billing zero-rated USOCs, he had no independent knowledge of whether 911 Charges were being billed on zero-rated USOCs at any time in 2010: "I have no knowledge of that, no sir."[19] The contradiction in Mr. Kelley's declaration does not just involve the date of an email, it also involves Mr. Kelley's sworn testimony that he had "no knowledge of that."

Third, BellSouth incorrectly asserts, without citation to anything, that it is "undisputed" that BellSouth inadvertently failed to bill zero-rated USOCs. To the contrary, the Districts cited the May 2010 Walkey email that inquired about the need to modify changes to the BellSouth

---

[18] Court File No. 307, at 3 (BellSouth Response) (emphasis supplied).
[19] Court File No. 280-4, at 71 (Kelley Dep.).

billing system that had been purposely created at an earlier date to exclude 911 Charges on zero-rated USOCs.[20] The Districts also noted that reference to exclusion of zero-rated USOCs from 911 Charges is found as early as March, 1991 in programming notes for BellSouth's computerized billing system.[21] BellSouth records establish that the BellSouth's failure to bill 911 Charges on zero-rated USOCs was the result of the intentional design of BellSouth's billing system and was in no way inadvertent.[22]

Finally, BellSouth argues that the Court should not strike all of Paragraph 5 of Mr. Kelley's declaration, but instead should delete the opening phrase, "In late 2010," from the paragraph. The rewritten Paragraph 5 would be nonsensical, in addition to being factually incorrect, and would provide nothing relevant to the pending motions for summary judgment.

BellSouth has admitted that Paragraph 5 of Mr. Kelley's declaration contradicts Rule 30(b)(6) testimony that BellSouth presented through Mr. Kelley. The Court should disregard Paragraph 5 of the declaration in its consideration of the pending motions for summary judgment.

    **B.    Ms. McNorton's Testimony Concerning the Meaning of BellSouth's Monthly Reports Was Unambiguous and Should Preclude Inconsistent Testimony or Argument.**

    **(1)    There is no ambiguity.** Contrary to BellSouth's assertion, neither Ms. McNorton's testimony as a Rule 30(b)(6) designee of BellSouth nor the monthly BellSouth report form about which Ms. McNorton testified is ambiguous.[23] Ms. McNorton testified that the opening sentence in the monthly report form in use at the time, which states "[i]n accordance with the Alabama Legislature, BellSouth has billed and collected Emergency Telephone

---

[20]    Court File No. 280-7 (Email from Walkey to Reed and Kelley, May 26, 2010).

[21]    Court File No. 290, at 9 (programming notes dated March 7, 1991).

[22]    *See* Court File No. 280, at 7 (Districts' Objections – Judicial Estoppel).

[23]    Plaintiff's Exhibit 2 to the McNorton Deposition was introduced in Ms. Fisher's Rule 30(b)(6) deposition as Exhibit 116, and is attached as Exhibit 1 to this Reply.

Surcharges as stated below" meant that BellSouth was billing and collecting the Surcharges "based on Alabama law" and "according to the terms of the law."[24] Her testimony was clear and unambiguous.

**(2)  BellSouth's later testimony contradicted its earlier testimony.** BellSouth's testimony through its Rule 30(b)(6) designee Ms. Fisher directly contradicted BellSouth's earlier testimony through its Rule 30(b)(6) designee Ms. McNorton concerning the meaning of the introductory sentence in the BellSouth monthly report in use at the time.  Ms. McNorton stated that the introductory sentence meant that Bellsouth billed and collected the surcharges "according to the terms of the law."[25] In contrast, Ms. Fisher testified that the introductory sentence in the BellSouth monthly report meant "that we are submitting these forms as required under the law, representing the amounts that we billed and collected."[26] When asked whether the sentence "mean[s] that the billing and collecting was done in accordance with the Tennessee law," Ms. Fisher asserted on behalf of the company:  "No.  It means this reporting was done in accordance with the Tennessee law."[27]

BellSouth's testimony through Ms. McNorton was unambiguous, as is the form reflected in Exhibits 114 and 116.  Ms. McNorton testified that the form means what it says, that BellSouth was billing and collecting 911 Surcharges in accordance with the applicable law. BellSouth's testimony through Ms. Fisher was that the form meant something much different: She testified that the form *does not mean what it says*, but instead means that *reporting – not billing and collection* – "was done in accordance with the Tennessee law."[28]

**(3)  The BellSouth monthly report forms are the same.** A comparison of the BellSouth monthly reports used in Tennessee and Alabama prior to July 2010 will establish

---

[24]  Court File No. 280-9, at 17-18 (McNorton Dep.).
[25]  *Id.*
[26]  *See* Exhibit 2 (Fisher Dep.), at 120-121.
[27]  *See id.* at 121.
[28]  *Id.*

that there is no basis for BellSouth's argument that the Tennessee monthly report (Exhibit 114[29]) is different in any meaningful way from the Alabama monthly report (Exhibit 116[30]). Furthermore, BellSouth's argument is directly contradicted by the sworn testimony of Ms. Fisher:

> Q. . . . Is Exhibit 116 the same form as was assembled in 114 with the exception to the reference to the state?
>
> A. Yes.[31]

**(4) The Tennessee ECD law and the Alabama ECD law are virtually identical.** As if constant repetition will somehow make its erroneous statements true, BellSouth has continually stated in its briefing that there are "substantial differences between the Alabama statue and the Tennessee ECD Law."[32] This assertion is baseless.[33] As extensively highlighted in the Districts' briefing, there were slight differences *in the cell phone, or CMRS, provisions* of the Alabama and Tennessee ECD Laws, but the relevant *landline* provisions are almost identical.[34] Apart from the minor statutory divergence in the statutes' provisions addressing cell

---

[29] Court File No. 280-11 (Exhibit 114, June 2010 monthly remittance reports).

[30] *See* Exhibit 1 (Plaintiff's Ex. 2 to McNorton Dep., Fisher Dep. Ex. 116).

[31] *See* Exhibit 2 (Fisher Dep.), at 125.

[32] Court File No. 307, at 4. *See, e.g.*, Court File No. 282 at 8 (discussing language from the Alabama ECD Law dealing with cell phone providers (not landline providers) and inaccurately suggesting that the Alabama ECD Law created an express agency relationship between landline providers and ECDs−which it clearly does not).

[33] **BellSouth is well-aware that this case solely involves landlines (and not cell phones)**, and is also fully aware that the Court's Order as to its Motion to Dismiss solely interpreted the CMRS provision of the Alabama ECD Law. Its continuous attempts to mislead the Court by advancing a position it knows to be untrue should be disregarded.

[34] Court File No. 298, at 8-10 (highlighting the fact that nowhere in the Alabama ECD Law does it expressly make landline suppliers agents of the ECDs and noting that the Alabama ECD Law only makes cell phone providers express agents); Court File No. 249, at 14 (underscoring that the federal court for the Northern District of Alabama in Madison County held that BellSouth, as a landline supplier, owed fiduciary duties to the ECDs under provisions of the Alabama ECD Law that are in direct parallel with the Tennessee ECD Law).

phones (which is not at issue in this lawsuit), the key provisions of the Tennessee and Alabama laws are in direct parallel, employing almost identical language and structure as to a service supplier's responsibilities in billing, collecting, and remitting 911 Charges on landlines.[35]

These parallel statements in the BellSouth monthly reports used in Alabama and Tennessee coupled with the parallel requirements in both states' ECD laws further underscore the fundamental inconsistencies between Ms. McNorton's and Ms. Fisher's testimony on behalf of BellSouth.

**(5)    Both sets of testimony were within the Rule 30(b)(6) designations.** Contrary to BellSouth's argument, the testimony of Ms. McNorton and Ms. Fisher upon which the Districts rely were both within the scope of the respective Rule 30(b)(6) notices pursuant to which they were designated by BellSouth.

Ms. McNorton was designated to testify about "BellSouth's current and historic policy and practice of billing, collecting, and remitting to [Madison County Communication District] the Emergency Telephone Service Charge" prescribed by Alabama law.[36]  Ms. McNorton's testimony concerning the billing practices and monthly remittance form used by BellSouth was squarely within the scope of the Rule 30(b)(6) notice under which she was designated. BellSouth's counsel made no objection that Ms. McNorton's testimony concerning the reporting form was outside the scope of her designation.[37]

Similarly, Ms. Fisher's testimony on behalf of BellSouth concerning the monthly reports submitted to the Districts was squarely within the scope of the topics for which BellSouth

---

[35]    *See id.*

[36]    Court File No. 308-03 (Notice of Deposition in Case No. 5:06-cv-1786-CLS). BellSouth seeks to introduce the March 15, 2007 notice into the record in this case through a declaration from one of its attorneys, Jeffrey Fisher, even though he obviously has no personal knowledge of the Alabama case or the 2007 McNorton deposition. According to Mr. Fisher's Motion for Admission Pro Hac Vice, (Court File No. 207, at 3), he was not even admitted to the practice of law until August, 2012, more than five (5) years after the notice was served and Ms. McNorton's deposition was held. Indeed, it appears that Mr. Fisher had not yet graduated from undergraduate school at the time of Ms. McNorton's deposition.

[37]    Court File No. 280-9 (McNorton Dep.), at 6 (deposition pages 17-19).

designated Ms. Fisher to testify. Ms. Fisher was designated by BellSouth to testify on its behalf as to, among others, topics 9 and 19.[38]

- Topic 9 was: "Defendants understanding and interpretation of its duties, obligations, and responsibilities under the ECD Law and the basis of its understanding and interpretation." As to this topic, Ms. Fisher was designated to testify as to filings and remittances.[39]

- Topic 19 was: "The creation, verification, and submission of the Monthly Reports and Annual Reports to the Plaintiff ECDs." As to this topic, Ms. Fisher was designated to testify without limitation.[40]

Ms. Fisher's testimony concerning the monthly report form submitted to the Districts was clearly within topics 9 and 19. Significantly BellSouth's counsel stated no objection that the questions that elicited Ms. Fisher's testimony concerning the BellSouth monthly report form were outside the scope of her designation.[41]

Ms. Fisher's testimony about the identity of the Alabama and Tennessee versions of the BellSouth monthly report was also squarely within the topics for which she was designated to testify. Counsel for BellSouth interposed no objection to the question that elicited Ms. Fisher's testimony that the monthly report form (Exhibit 116), about which Ms. McNorton testified, was identical to the form submitted by BellSouth to the Tennessee Districts, save for the substitution of the reference to "Tennessee" for "Alabama."[42]

---

[38] Court File No. 280-1 (Rule 30(b)(6) Notice of Deposition to BellSouth).

[39] *See* Exhibit 2 (Fisher Dep.), at 7.

[40] *See id.* at 8.

[41] *See id.* at 120-121.

[42] *See id.* at 125.

**(6) The requirements for judicial estoppel have been established.**
Bellsouth is incorrect in its assertion that Ms. McNorton's testimony was "vague" or "ambiguous," while Ms. Fisher's testimony was "unambiguous." The testimony of each Rule 30(b)(6) witnesses was clear, and the later testimony of Ms. Fisher was clearly inconsistent with that of Ms. McNorton. The requirement that the later testimony be "clearly inconsistent" as set out in the cases cited by BellSouth has been met; the cases cited by BellSouth offer no support to BellSouth's position that the requirement has not been met.[43]

Similarly, BellSouth is incorrect in its assertion that judicial estoppel does not apply because it asserts that it did not prevail in the Alabama litigation. Indeed, BellSouth did not prevail in its assertion that it was not liable for its failure to bill, collect, and remit 911 Charges as required by the Alabama ECD Law.[44] However, BellSouth settled the case before a jury had the opportunity to decide whether BellSouth had any good faith justification for its actions, as BellSouth claimed.[45] As explained more fully in Section I, *infra*, judicial estoppel based upon the sanctity of the oath does not require that the party offering the inconsistent sworn testimony have prevailed in the earlier proceeding.

For these reasons, BellSouth's testimony and arguments that contradict its earlier testimony through Ms. McNorton should not be considered by the Court in connection with the pending motions for summary judgment.

---

[43] For example, *Lorillard Tobacco Co. v. Chester, Willcox & Saxbe*, 546 F.3d 752 (6th Cir. 2008) did not even involve inconsistent testimony; it involved allegedly inconsistent arguments of counsel. *Griffith v. Wal-Mart Stores*, 135 F.3d 376, 382 (6th Cir. 1998) also did not involve inconsistent testimony; it involved the question of whether an individual's application for social security disability benefits was inconsistent with his ADA claim that he could have worked at his job with reasonable accommodations.

[44] *Madison County Commc'ns Dist. v. Bellsouth Telecomms., Inc.*, No. 5:06-CV-1786-CLS, 2009 WL 9087783, *12 (N.D. Ala., Mar. 31, 2009).

[45] *See* Exhibit 3 (Order of Dismissal, dated 10/15/2009, in *Madison County Commc'ns Dist. v. Bellsouth Telecomms., Inc.*, No. 5:06-CV-1786-CLS (N.D. Ala.)).

C. **Sworn Testimony of Both Ms. McNorton and Ms. Fisher Estop BellSouth from Offering Contrary Testimony and Argument Concerning the Districts' Reliance Upon BellSouth's Billing and Remittance of 911 Charges.**

In its Objections, the Districts explained how the Rule 30(b)(6) testimony of *both* Ms. McNorton and Ms. Fisher established that the Districts had to rely upon BellSouth's reports concerning the proper billing and remittance of 911 Charges.[46] Contrary to BellSouth's assertions, the testimony of both Rule 30(b)(6) witnesses was within the scope of their designations and the testimony of both establishes that BellSouth is judicially estopped from presenting testimony or argument that the Districts did not reasonably rely upon BellSouth's reports and actions.

(1) **Ms. McNorton's Rule 30(b)(6) Testimony Is Relevant.** Ms. McNorton testified on behalf of BellSouth that an emergency communications district "has to rely upon BellSouth to accurately bill its customers the 911 fee and to remit that amount to the District."[47] There is no question that Ms. McNorton's testimony was within the scope of the topic about which she was testifying on BellSouth's behalf – BellSouth's counsel interposed no objection that the questions that elicited it were outside the scope of her Rule 30(b)(6) designation.[48]

Contrary to BellSouth's footnoted claim,[49] Ms. McNorton's testimony on behalf of Bellsouth estops BellSouth from arguing or offering testimony that the Districts did not reasonably rely upon BellSouth to accurately bill and remit 911 Charges:

- As BellSouth's designated Rule 30(b)(6) witness in this case acknowledged, the BellSouth monthly reports used in Alabama and Tennessee were identical except for the reference to the state.[50]

---

[46] Court File No. 280, at 12-14 (Districts' Rule 56(c)(2) Objs., Judicial Estoppel).

[47] *See* Court File No. 280-9 (McNorton Dep.), at 15-16.

[48] *Id.*

[49] *See* Court File No. 307 (BellSouth Response), at 7, n.7.

[50] *See* Exhibit 2 (Fisher Dep.), at 125.

- There is no "audit right" set forth in the rules of the Tennessee Regulatory Authority. To the contrary, TRA Reg. 1220-4-8-.13(3)(e) *requires BellSouth* itself to provide a "means of auditing the subscriber base by number and type." It does not provide a means for the Districts to demand or force an audit. The regulation has nothing to do with Ms. McNorton's testimony that the ECD reasonably relied upon BellSouth to truthfully bill, collect, report, and remit 911 Charges.

- None of the Tennessee legal authorities cited by BellSouth that required it to comply with the ECD Law, but which BellSouth chose to disregard, have anything to do with Ms. McNorton's testimony that ECDs relied upon BellSouth to truthfully bill, collect, report, and remit 911 Charges.

BellSouth is also estopped from contradicting the testimony of Ms. Fisher that the Districts depend upon BellSouth to accurately remit 911 Charges and that there is no source of information available to the Districts other than the remittance information supplied by BellSouth concerning the appropriate amount of 911 Charges due them.[51] Contrary to BellSouth's argument, Ms. Fisher's testimony was not outside the scope of her Rule 30(b)(6) designation by BellSouth. As discussed, *infra,* Ms. Fisher's testimony concerning the reports BellSouth provided to the Districts and the absence of any other information concerning the 911 Charges that were owed to the Districts was within the scope of topics 9 and 19 of the Districts' Rule 30(b)(6) notice.[52] In spite of the scope of topics 9 and 19, BellSouth's counsel tried mightily to prevent Ms. Fisher from testifying concerning whether the Districts depend upon BellSouth to accurately remit 911 Charges, repeatedly interrupting the Districts' counsel with

---

[51] *See* Exhibit 2 (Fisher Dep.), at 279-282.

[52] Court File No. 280-1 (Rule 30(b)(6) Notice of Deposition to BellSouth).

improper objections.[53] Nevertheless, Ms. Fisher testified that the Districts would rely on BellSouth to accurately remit 911 Charges.[54]

Ms. Fisher also testified that the Districts have no source of information about BellSouth's compliance with the law other than the monthly reports. BellSouth's counsel did not object that the questions that elicited this testimony were not within the topics on which BellSouth had designated Ms. Fisher to testify:

> Q (by Mr. Hitchcock): Yes. Is there any source of information available to the Districts, other than the remittance reports provided by BellSouth, concerning the proper amount of 911 fees that are due and payable from BellSouth customers?
>
> A: That's the only – only the remittance forms are what we had provided to the Districts, to my knowledge, for their information.[55]

BellSouth's testimony that the Districts had no other source of information, other than the monthly remittance reports, concerning the proper amount of 911 Charges that are due and payable from BellSouth customers is entirely consistent with the testimony of each District. Each relied on BellSouth's monthly reports and thought that they accurately reported all of BellSouth's lines that were subject to the 911 Charge.[56] Similarly, no District was aware of or suspected that BellSouth was not billing and remitting 911 Charges in accordance with the ECD Law.[57] Bellsouth's unsupported assertion that it is "undisputed" that the Districts knew or should have known of BellSouth's wrongdoing is clearly wrong.[58]

---

[53] *See* Exhibit 2 (Fisher Dep.), at 279-281.

[54] *See* Exhibit 2 (Fisher Dep.), at 279-281.

[55] *See id.* at 281-282.

[56] *See* Court File No. 285-12 (Exhibit 75 – Combined Excerpts from Districts' Deposition testimony); s*ee also* Court File No. 285-13 (Exhibit 76 – Collective Exhibit of District Directors Declarations).

[57] *See* Court File No. 285-14 (Exhibit 77 – Combined Excerpts from Districts' Deposition testimony).

[58] *See* Court File No. 307 (BellSouth Response), at 9.

BellSouth designated Ms. Fisher as its representative to testify on its behalf concerning five (5) major Rule 30(b)(6) topics, including BellSouth's reports to the Districts, and has repeatedly submitted declarations by Ms. Fisher in support of its positions. Yet, to avoid testimony that is inconsistent with its theories of the case, BellSouth suggests that Ms. Fisher had no basis for her knowledge of BellSouth's reports.[59] BellSouth's repeated reliance upon Ms. Fisher belies its objections to her knowledge.

### D. Judicial Estoppel Prevents BellSouth From Offering Testimony Contradicting Its Prior Sworn Testimony.

BellSouth acknowledges that Rule 30(b)(6) testimony is binding upon a company, yet argues that estoppel by oath cannot apply because Rule 30(b)(6) testimony can be contradicted.[60] This argument is a non-sequitur and has no application to this case.

This is not a situation in which third parties or separate witnesses are contradicting BellSouth's sworn Rule 30(b)(6) testimony in this case. Rather, this is a situation in which BellSouth is seeking *to contradict its own* sworn testimony on identical subjects offered in a previous case and in this case.

In this context, Jan McNorton and Linda Fisher are not separate witnesses offering contradictory testimony. As Rule 30(b)(6) deponents, their testimony represents the testimony of BellSouth, not of themselves.[61]

This distinction is important because not a single case cited by BellSouth in connection with its argument about the nature of Rule 30(b)(6) testimony involves application of judicial

---

[59] *Id.* at 7-8.

[60] *See id.* at 10.

[61] *See* Fed. R. Civ. P. 30(b)(6) ("The named organization must then designate one or more officers, directors, or managing agents or designate other persons who consent *to testify on its behalf*." (emphasis added)); *see also Rosenruist-Gestao E Servicos LDA v. Virgin Enterprises Ltd.*, 511 F.3d 437, 445 (4th Cir. 2007) ("Essentially, '[i]n a Rule 30(b)(6) deposition, there is no distinction between the corporate representative and the corporation.'" (quoting *Sprint Commc'ns Co. v. Theglobe.com, Inc.*, 236 F.R.D. 524, 527 (D. Kan. 2006)).

estoppel, to the extent they even involve Rule 30(b)(6) concepts in the first instance. None of these cases address a circumstance where a corporate party attempts to contradict its own previously sworn testimony in another case or proceeding. Accordingly, BellSouth's argument has no merit, and it should be rejected.

### III. NO BASIS EXISTS FOR CONSIDERATION OF ¶¶ 5-10 OF MS. GUSTAFSON'S DECLARATION.

Bellsouth does not challenge the fact that paragraphs 5-10 of Ms. Gustafson's declaration constitute rank hearsay. Nevertheless, in spite of the fact that Ms. Gustafson never testified as a Rule 30(b)(6) deponent, BellSouth argues that she may offer a declaration filled with inadmissible hearsay because it designated her as a Rule 30(b)(6) witness three (3) weeks before the close of discovery, but never made her available to be deposed within the discovery period.

On January 23, 2014, months after the Districts' Rule 30(b)(6) notice had been filed, BellSouth finally designated Ms. Gustafson as BellSouth's designated witness for three (3) topics.[62] In the letter disclosing the designations, Mr. Breslin offered to make Ms. Gustafson available as a witness on February 14, 2014, the day before the discovery period expired on February 15, 2014.[63] The Districts agreed to the proposed schedule. However, Ms. Gustafson was not made available on that date,[64] and she was never offered as a witness within the discovery period.[65] Ultimately, because of the delay in completing other depositions, the

---

[62] *See* Court File No. 308-5 (Letter from Mr. Breslin to Mr. Hitchcock, Jan. 23, 2014).

[63] *See* Court File No. 213 (Amended Scheduling Order).

[64] On February 12, 2014, Mr. Breslin cancelled Ms. Gustafson's deposition because of inclement weather earlier in the week. The Districts unsuccessfully urged that the deposition proceed, noting forecasts of sunny skies and temperatures in the 40's. *See* Exhibit 4 (Email from Mr. Hitchcock to Mr. Breslin, Feb. 12, 2014).

[65] On February 13, 2014, Mr. Breslin reported that "Jeannie Gustafson says her schedule is filing up and has asked for additional dates." Mr. Breslin indicated that his next available dates were February 17th and 20th, both of which were outside the discovery period. *See* Exhibit 5 (Email from Mr. Breslin to Mr. Hitchcock and Mr. Greenholtz, Feb. 13, 2014).

Districts decided it was not practical to take Ms. Gustafson's deposition outside the discovery period.[66]

In spite of the fact that Ms. Gustafson was never deposed as a Rule 30(b)(6) witness, Bellsouth asserts that Ms. Gustafson may submit a "30(b)(6) declaration." No provision of the Rules of Civil Procedure permits such a declaration. Nor do any of the cases cited by BellSouth support the novel proposition that a witness who never testified in a Rule 30(b)(6) deposition may submit a declaration, untested by cross-examination, that contains inadmissible hearsay.

It is significant that BellSouth continues to insist that Ms. Gustafson's declaration represents the testimony of BellSouth under Rule 30(b)(6), even though BellSouth knows that, at least as to BellSouth, the declaration is false. In her declaration, which BellSouth seeks to adopt as the testimony of the Company, Ms. Gustafson declared:

> 3. Outside of AT&T's Response to Hamilton County RFP # 111-01, I am unaware of any other response to an RFP that discussed 911 Surcharge rates. I am unaware of any response to any RFP that addressed the number of 911 Surcharges that would be billed or how 911 Surcharges are billed.
>
> 4. I am unaware of any instance in which anyone at AT&T has negotiated or intentionally altered 911 Surcharge rates or the billing of 911 Surcharges with any current or potential customer.[67]

As shown by the BellSouth emails that Ms. Fisher has now authenticated with her latest declaration,[68] BellSouth *did* submit proposals listing 911 Charges as $0.00 and *did* enter into contracts that waived 911 Charges.[69] There is no question that BellSouth knows that Ms. Gustafson's declaration is false as to BellSouth, yet it continues to vigorously insist that this false testimony should be admitted as the testimony of the Company.

---

[66] Court File No. 308-6 (Email from Mr. Hitchcock to Mr. Breslin, Feb. 19, 2014).

[67] Court File No. 264 (Gustafson Declaration).

[68] Court File No. 309 (May 12, 2014 Fisher Decl. and Exhibits A and B).

[69] *See* Court File Nos. 279-1 and 279-2 (listing contracts on which BellSouth had agreed to "waive" 911 Charges and discussing responses to requests for proposals that listed 911 Charges as $0.00).

The Districts pointed to examples of BellSouth's promises not to bill 911 Charges in bid proposals and contracts as evidence of BellSouth's deliberate wrongdoing and its competitive motivations. BellSouth seeks to defend the wrongful actions disclosed in its emails by asserting through Ms. Fisher's latest declaration that the lines involved were wireless lines, not landlines. The Districts are guaranteed to receive at least 25% of the revenue from 911 Charges on wireless lines,[70] plus additional funds for equipment purchases and other special purposes. Even if the lines referenced in the emails were wireless lines, BellSouth apparently considers its wrongful actions excused because it was "only" taking from the Districts 25 cents of every "waived" 911 dollar, not the entire dollar.

BellSouth does not contest the fact that paragraphs 5 – 10 of Ms. Gustafson's declaration are hearsay. No provision of the Federal Rules of Civil Procedure permits a party to offer a "30(b)(6) declaration" from a person who never testified as a Rule 30(b)(6) deponent. Fed. R. Civ. 56(c)(4) requires that a declaration in support of a motion for summary judgment "must be made on personal knowledge [and] set out facts that would be admissible in evidence." Hearsay evidence cannot be considered when reviewing a motion for summary judgment.[71] Because Paragraphs 5 – 10 of Ms. Gustafson's declaration contain nothing but hearsay, the Court should disregard those paragraphs in its consideration of the pending motions for summary judgment. The Court should not consider any of the remaining parts of Ms. Gustafson's declaration as anything other than her personal testimony, none of which is relevant to the pending motions.

## **CONCLUSION**

For the reasons set forth in this Reply, the Districts respectfully request that the Court (i) find that judicial estoppel applies to preclude consideration of testimony and argument that contradicts prior sworn testimony of BellSouth, as requested in the Districts' Objections based

---

[70] *See* Tenn. Code Ann. § 7-86-303(d)(1).
[71] *North Am. Specialty Ins. Co. v. Myers*, 111 F.3d 1273, 1283 (6th Cir. 1997).

upon judicial estoppel,[72] and (ii) find that paragraphs 5 –10 of Ms. Gustafson's declaration should be disregarded because they contain nothing but rank hearsay.[73]

Respectfully submitted,

**CHAMBLISS, BAHNER & STOPHEL, P.C.**

By: s/ Frederick L. Hitchcock
    Frederick L. Hitchcock, BPR No. 5960
    Tom Greenholtz, BPR No. 020105
    Yousef A. Hamadeh, BPR No. 25425
605 Chestnut Street, Suite 1700
Chattanooga, Tennessee 37450
Telephone: (423) 757-0222

*Special Counsel for the Hamilton County Emergency Communications District*

## CERTIFICATE OF SERVICE

I hereby certify that on this 22d day of May, 2014, a copy of the foregoing pleading was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. All other parties will be served by regular U.S. mail. Parties may access the filing through the Court's electronic filing system.

**CHAMBLISS, BAHNER & STOPHEL, P.C.**

By: s/ Frederick L. Hitchcock

---

[72] Court File No. 280 (Districts' Rule 56(c)(2) Objs., Judicial Estoppel).

[73] Court File No. 279 (Districts' Rule 56(c)(2) Objs., Hearsay).